# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

ROBERT GLEN HARRISON, )
)
       Plaintiff, )
)
v. ) Case No. CIV-11-244-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
       Defendant. )

## OPINION AND ORDER

Plaintiff Robert Glen Harrison (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on August 16, 1968 and was 39 years old at the time of the ALJ's decision. There is a discrepancy in the record as to extent of Claimant's education. He testified at the administrative hearing that he completed his education through the twelfth grade. (Tr. 28). His filing paperwork indicates he

completed his education only through the tenth grade. (Tr. 140). Claimant worked in the past as a dairy farmer and a welder. Claimant alleges an inability to work beginning June 30, 1999 due to limitations resulting from degenerative disc disease, back and neck pain, left arm pain and numbness, left leg pain and muscle spasms, chest pain, hypertension, hearing difficulty, headaches, gastric problems, depression, and anxiety.

**Procedural History**

On May 4, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On April 22, 2008, an administrative hearing was held before ALJ Gene M. Kelly in Tulsa, Oklahoma. On August 6, 2008, the ALJ issued an unfavorable decision. On May 20, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual

functional capacity ("RFC") to perform light work with some limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly consider all of the medical evidence and the combined effects of Claimant's impairments in reaching his RFC; (2) engaging in a faulty credibility determination; and (3) finding Claimant could perform a full range of light work at step five.

**RFC Determination**

Claimant contends the ALJ failed to consider his degenerative disc disease, levoscoliosis, insomnia, gastritis, and esophagitis. In his decision, the ALJ determined Claimant suffered from the severe impairments of back and neck problems, left arm and left leg problems, depression, anxiety, headaches, hearing problems, and chest pain. (Tr. 15). He found Claimant retained the RFC to perform light work, except Claimant was limited to occasional stooping, bending, squatting, kneeling, pushing/pulling, and foot controls. The ALJ also found Claimant had slight limitations with twisting and nodding his head. He restricted Claimant from extreme temperatures, wet/damp environments, fast and dangerous machinery, and phone work. The ALJ imposed mental restrictions upon Claimant to simple, routine, and repetitive work, limited stress, and a

5

"slight limitation" with the public, co-workers, and supervisors. (Tr. 16). Upon consultation with a vocational expert, the ALJ determined Claimant's RFC could perform jobs available in the national economy such as mailroom clerk and assembler. (Tr. 19). As a result, he concluded Claimant was not disabled from the alleged onset date through June 30, 1999, the date last insured. (Tr. 20).

Claimant reported low back pain in June of 1995, stating that he ruptured two discs in his back while working for a rubber company. (Tr. 233, 380). On July 20, 1995, Claimant underwent a hemilaminectomy, medial facetectomy, foraminotomy, and microdiskectomy at left L4-5 and L5-S1. (Tr. 231). Claimant's discharge diagnosis was acute lumbar radiculitis due to L4-5 and L5-S1 disc herniation. (Tr. 371). He did well and was discharged on the first post-operative day. (Tr. 231).

In his briefing, Claimant sets out a laundry list of conditions for which he sought treatment at W. W. Hastings Indian Hospital from December 2, 1993 though February 7, 2006 and cites to approximately 100 pages of medical records to support those conditions. Such a blanket, generalized recitation does not assist the Court in its review of Claimant's medical conditions. Nor does the mere presence of those conditions necessarily translate into a finding of an impairment. Hinkle v. Apfel, 132 F.3d 1349, 1352

(10th Cir. 1997) citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

On October 14, 2005, Claimant was evaluated by Dr. George H. Benjamin, complaining of lower back pain. Dr. Benjamin noted Claimant suffered from the chronic condition of postlaminectory syndrome - lumbar. He found Claimant needed no medication refills but ordered an MRI and consult. (Tr. 247).

On October 17, 2005, Claimant underwent an MRI. The impression from Dr. Dan Riner was recurrent herniation at L4-5 on the left. Additionally, Dr. Riner found a small herniation at L5-S1 on the left. (Tr. 257).

On October 25, 2005, Claimant was evaluated by Dr. Kelly R. Danks on referral from Dr. Benjamin. Dr. Danks noted Claimant's complaints of pain and spasms in his back that radiate down the posterior aspect of his thigh down into his calf. Sitting and standing aggravated his condition. He had no right leg pain but did experience some numbness and tingling. Past physical therapy did give him some relief. Dr. Danks found Claimant stood upright and flexed down to 40 degrees with pain located in his back in the left paraspinal region. Extension bothered Claimant as well. Straight leg raising gave him some mild pain at 90 degrees with positive reinforced Lasegue. His motor examination was intact. Claimant's reflexes were trace present and his toes were downgoing. Sensation was intact. (Tr. 245).

Dr. Danks' review of the MRI revealed Claimant's previous surgery at L5-S1 with a small central disc. Dr. Danks noted a herniated disc with neural foraminal narrowing and lateral recess stenosis at L4-5 on the left. His assessment was lumbar disc disease at L4-5. If Claimant failed to improve, Claimant was to return to Dr. Danks for consideration of surgical options. (Tr. 246).

On November 1, 2005, Claimant was seen by Dr. Ronald E. Woosley. Dr. Woosley's impression was L5 radiculopathy, left, secondary to herniated nucleus pulposus. He recommended a decompression of the L5 nerve root but did not recommend a multilevel fusion at that time as Claimant's "back pain is not that severe." (Tr. 347).

On November 29, 2005, Claimant was admitted into the hospital for an L4-5 partial hemilaminectomy, left, with microdiskectomy. The final diagnosis was L5 radiculopathy, left, secondary to herniated nucleus pulposus, degenerative disc disease at L4-5, L5-S1, and hypertension. After the procedure at discharge, Dr. Woosley found Claimant's motor and sensory in his extremities to be intact and his pain to be under control. (Tr. 264-65).

Dr. Woosley stated in a letter dated September 11, 2006 that Claimant was having difficulty with cramping in the left calf. He also experienced intermittent numbness in the left arm and leg.

8

After reviewing an MRI, Dr. Woosley found the lumbosacral spine showed resolution of the defect at L4-5 on the left with no real change in the degenerative disc disease pictured at L4-5 and L5-S1. All other levels were okay. Claimant's cervical spine looked normal. Dr. Woosley attributed Claimant's symptoms to degenerative disc disease. (Tr. 392).

On August 16, 2006, Dr. Woosley authored a letter to another doctor reporting that Claimant "did well" as a result of the surgery but that he was still having difficulty with back pain when he carried heavy objects. His back symptoms worsened with activity in the summer. Claimant reported back pain with pain radiating into both legs. He also complained of a tight bandlike sensation in the left proximal arm associated with numbness of the arm and hands with some neck pain. On examination, Claimant did not appear to be in any significant distress. He moved around the room "fairly well" and was able to heel and toe walk. Romberg was negative and, on direct muscle testing, no weakness was detected. His reflexes were symmetrical at about 1+ and his back wound was well healed. Claimant experienced pain with straight leg raising in the back bilaterally. Dr. Woosley recommended further MRIs. (Tr. 341).

On August 28, 2006, Claimant underwent an MRI of the cervical and lumbar spine. The cervical spine was found to be essentially

normal while the view of the lumbar spine showed some desiccation of the L4-5 and L5-S1 discs. There was also a small paramedian herniation at L5-S1 on the left which appeared to be impinging on neural elements. No other compromise of the canal or foramina was demonstrated. (Tr. 396).

On February 26, 2007, Dr. Lise Mungul completed a Physical Residual Functional Capacity Assessment form on Claimant. Dr. Mungul estimated Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk with normal breaks for about 6 hours in an 8 hour workday, sit with normal breaks about 6 hours in an 8 hour workday, and engage in unlimited pushing and pulling. (Tr. 364).

Dr. Mungul place a limitation upon Claimant to only engage in occasional stooping but could frequently climb, balance, kneel, crouch, and crawl. (Tr. 365). She recognized the prior hemilaminectomy and diskectomy performed in 1995 on Claimant at L4-5. (Tr. 364). Dr. Mungul's primary diagnosis was degenerative disc disease. (Tr. 363).

Claimant contends the ALJ failed to consider his degenerative disc disease. This Court does not agree. The ALJ identified Claimant's "problems with back and neck" as a severe impairment. (Tr. 15). While this is a generalized designation, the ALJ further found Claimant suffered from degenerative disc disease within the

10

body of his decision. (Tr. 15, 18). He further found the condition was better after surgery but got progressively worse after the date of last insured as evidenced by an MRI performed on October 17, 2005. (Tr. 18). The ALJ then imposed limitations on Claimant's ability to stoop, bend, squat, knell, push/pull and use of foot controls. (Tr. 16). Based upon these findings, this Court cannot conclude that the ALJ failed to consider Claimant's degenerative disc disease. As far as the ALJ's failure to consider Claimant's levoscoliosis, the first instance that this diagnosis was offered occurred on September 19, 2005 - some six years after the expiration of Claimant's insured status.

Claimant also contends the ALJ should have considered the combined effects of Claimant's mental conditions and "psychological disorders." The ALJ discussed the various conditions, both mental and physical, which were diagnosed and properly found as impairments. His RFC findings clearly demonstrate the ALJ considered the combined effects of these conditions. (Tr. 16-18); Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007).

### Credibility Analysis

Claimant next asserts the ALJ failed to consider all of his subjective complaints of pain in his analysis. It is well-established that "findings as to credibility should be closely and

affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the

ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

In his decision, the ALJ acknowledged Claimant's testimony regarding leg spasms, back problems, pinched nerves, neck pain, headaches, numbness, burning, and problems with his hearing. He also recited Claimant's testimony regarding sleep problems. (Tr. 17). The ALJ also set forth the bases for failing to afford Claimant's testimony complete credibility. He discounted portions of Claimant's testimony because the conditions developed well after the date of last insurance. (Tr. 18). He also noted discrepancies in Claimant's recitation of his work history which caused the ALJ to doubt Claimant's veracity. (Tr. 17). The ALJ also found discrepancies with the level of disability claimed by Claimant and the objective medical evidence related to his actual condition. (Tr. 17-18). Based upon this record, this Court does not find error in the ALJ's credibility analysis.

**Step Five Determination**

Essentially, Claimant contends that the ALJ did not include all of Claimant's testimony as to his limitations in his questioning of the vocational expert. Because this Court has found no error in the ALJ's credibility determination, the questioning of

the vocational expert was adequate and encompassed all of Claimant's limitations.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 22nd day of August, 2012.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE